# CHICAGO & NORTHWESTERN RAILWAY CO.

## *v.*

## JOHN HARRIS.

1.  FENCING RAILROADS—*negligence—liability for injury to stock.*  Rail-
road companies are required to fence the tracks of their roads with sufficient
fences to turn stock, and after erecting them, to keep them in repair;   they
are required to put in gates at farm crossings, which are a part of the fence,
and the duty to keep their fences in repair, includes the duty of keeping
these gates safe and securely closed, so as to afford equal protection from
stock getting upon their roads at such places as at other points.

2.  While these companies are not required to keep such a guard on their
roads as would see a breach at the instant it occurs, and repair it at the time,
still the law requires them to keep such a force as may discover breaches and
openings in their fences, and close them in a reasonable time.   And to neg-
lect doing so, for a week or more, is a neglect of duty that will ordinarily
render them liable for an injury ensuing therefrom.

3.  So in an action against a railroad company, to recover for injuries to
two horses, inflicted by a train on defendants' road, where it appeared the
horses passed upon the track through an open gate at a farm crossing, the
company, having permitted the gate to remain open for a week previous to
the accident, were regarded as guilty of such negligence as rendered them
liable.

4. The fact that plaintiff's horses entered the close of another, through an insufficient fence upon the highway, and passed from thence upon the defendants' road, could not affect his right of recovery.

5. SAME—*of comparative negligence.* And upon objection that the plaintiff was so far in fault in permitting his horses to run at large, when prohibited by the statute, that he should not be permitted to recover, it appearing the escape of the horses was involuntary on his part, that he made reasonable efforts to reclaim them soon after their escape, but was unsuccessful, continuing the search for them until dark of the night they were injured, and when last seen by him, while endeavoring to get them up, they were going in an opposite direction from the railroad, it was *held*, the negligence of the defendants was so much greater than that of the plaintiff, that, when compared, that of the latter was slight, and rendered the defendants liable for the injury.

APPEAL from the Circuit Court of Winnebago county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The opinion states the case.

Mr. JAMES M. WIGHT, for the appellants.

Mr. H. W. TAYLOR, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case, brought by appellee in the Winnebago circuit court, against appellants, to recover for injuries to two horses, inflicted by a train on their railroad. It appears that about the twenty-first of November, 1869, appellee let his horses into his yard to water, but not being able to get them back to the pasture, he left them and went to church, it being on Sunday. He left all of the gates of the lot in which the horses were left, closed, but on his return from church, a little after noon, the horses had got out and were gone. It appears the horses entered Hager's land through open bars, and through Delaney's land, and through Amos Harris' land, no fence separating these three tracts, and from his land they passed through an open gate at a farm crossing, and then

530          C. & N. W. R. R. Co. *v.* HARRIS.          [Sept. T.,

Opinion of the Court.

passed east on the track about eighty rods, where they were struck by appellants' locomotive and train, coming from the west, at a culvert at an embankment. One of the horses was so much injured that he was never removed from the ditch into which he was precipitated, and was finally killed. The other was badly injured, but was removed to appellee's stable, where he remained for about two weeks, when it became necessary to kill him. The horses were proved to be worth from $225 to $250 before they were injured.

The place where the injury occurred, and the gate through which the animals passed to the railroad track, were points at which appellants had fenced their track, and had put in the gate. It seems the gate had been open for some time, and the section foreman had passed frequently while it stood open. The jury found a verdict for appellee. A motion for a new trial was entered, which was overruled and judgment rendered on the verdict, and the case is brought to this court by appeal, and a reversal is asked.

The section foreman testified that he was in the habit of passing that part of the road four times each day, for the purpose of inspecting its condition. And the evidence, we think, clearly establishes the fact, that the gate had stood open about a week before the accident. This, then, establishes negligence on the part of appellants. On that point, we can find no fault with the conclusion of the jury. The evidence fully warranted them in arriving at that conclusion. But it is urged that appellee was also guilty of negligence, and to that degree that he was not entitled to recover. The law requires these companies to fence the track of their roads with sufficient fences to turn stock, and after erecting them, to keep them in repair. The statute also requires them to put in gates at farm crossings. These gates are a part of the fence, and the duty to keep their fences in repair, includes the duty of keeping them safe and securely closed, so as to afford equal protection from stock getting upon their roads at such places as at other points. See *Illinois Central R. R. Co.* v. *Arnold*, 47 Ill. 173. And in that

case it was held, where an animal entered the close of another, through an insufficient fence upon the highway, and passed thence through a space made for bars, and used as a farm crossing upon the railroad track, and was killed, and it appeared that the bars were left down for three months previously, that the statute required the railroad company to erect and maintain sufficient fences, of which bars formed a part, and the company were guilty of negligence in permitting them to remain down so long a time.

That case differs from this, in the length of time the two fences were permitted to remain open to the passage of stock to their roads. But to permit a gate to remain open for a week is negligence. While the company were not required to keep such a guard on their road as would see a breach at the instant it occurred, and repair it at the time, still the law requires them to keep such a force as may discover such breaches and openings in their fences, and to close them in a reasonable time. And to neglect doing so for a week or more, is a neglect of duty that will ordinarily render them liable for the injury ensuing therefrom.

As to the fact that appellee's horses entered his brother's field, and passed thence upon appellant's road, does not affect appellee's right of recovery, as we have seen from the *Illinois Central R. R. Co.* v. *Arnold, supra.* This case is like that in this respect, and that must govern this, as no reasonable distinction can be drawn between the two cases.

It is also urged that appellee was so far in fault in permitting his horses to run at large, when prohibited by the statute, that he should not be permitted to recover. It is manifest that he had not observed the law in that respect. The escape of the horses was involuntary on his part, and it seems he made reasonable efforts to reclaim them soon after their escape, but was unsuccessful. He continued the search for them, as he swears, until dark of the night they were killed. And he says the last he saw of them while endeavoring to get them up, they were going in an opposite direction from the railroad. Had

he caught them, he would no doubt have prevented the injury. But while it was a violation of law to permit them to be at large, the company were violating another law in permitting the gate to remain open, which, if shut at the proper time, would have prevented the horses from getting upon the track and receiving the injury. It may be appellee was liable to answer to whoever might prosecute, for his breach of the statute he had violated, but that did not relieve appellants from their duty under the statute, that required them to keep their fences in such a condition as to prevent stock from getting upon their road. Because appellee may have violated another law, the company were not at liberty to omit their duty and thereby kill appellee's horses. The evidence seems to be clear, that appellants had permitted this gate to stand open a large portion of the time during the summer and fall previous to the accident. Appellee's permitting the horses to be at large was not willful, but it seems he made all reasonable efforts to prevent it. And under the circumstances, we think the negligence of appellants was so much greater than that of appellee, that, when compared, that of the latter was slight, and rendered appellants liable for the injury.

The instructions given are in harmony with the views we have here expressed, and those refused announce different and incorrect rules of law, and the modifications made in appellants' instructions, before they were given, were proper. The instructions, taken altogether, were as favorable as appellants were entitled to receive, and no error was committed in giving or refusing them. The judgment of the court below must be affirmed.

*Judgment affirmed.*

Mr. Justice Sheldon took no part in the decision of this case, it having been tried before him in the court below.